# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 17-cv-60208-BLOOM/Valle

JAMES BAER,

      Plaintiff,

v.

SILVERSEA CRUISES LTD.,

      Defendant.

_____/

## ORDER ON MOTION FOR SUMMARY JUDGEMENT

**THIS CAUSE** is before the Court upon Defendant Silversea Cruises Ltd.'s Motion for Summary Judgment and Memorandum of Law in Support, ECF No. [104], filed on December 20, 2017 ("Summary Judgment Motion"). Also before the Court is Defendant's Omnibus Daubert Motion to Strike Plaintiff's Experts, Christopher Hayes, Dr. John Bradberry, and Dr. David Watson, ECF No. [107] ("Daubert Motion," together with the Summary Judgment Motion, "Motions"), filed on December 26, 2017. The Court has carefully reviewed the Motions, the record, all supporting and opposing filings, the exhibits attached thereto, and is otherwise fully advised. For the reasons that follow, Defendant's Summary Judgment Motion is granted and Defendant's Daubert Motion is denied as moot.

## I.      PROCEDURAL BACKGROUND

Plaintiff James Baer, ("Baer" or "Plaintiff") initially filed this case against Defendant Silversea Cruises Ltd.'s ("Silversea" or "Defendant") on January 26, 2017, alleging that Defendant negligently handled Plaintiff's medical care after a slip and fall on Defendant's cruise ship. ECF No. [1] ("Complaint"). The Court denied Defendant's motion to dismiss based on the

one-year limitations period contained in Plaintiff's Passage Contract with Defendant, ECF No. [29], holding that from the four corners of the Complaint it was not apparent that Plaintiff's claim was barred by the limitations period. ECF No. [29] at 4. The Court further held that the question of the applicability of the limitations, which requires "analysis of the overall circumstances of the ticket itself and any extrinsic factors indicating the passenger's ability to become meaningfully informed of the contractual terms at stake" was "a question of fact not suitable for disposition upon a motion to dismiss." *Id.* at 4, 6. After further motion practice and amendment, Defendant answered the operative Amended Complaint, ECF No. [44] on August 24, 2017. ECF No. [48].

On December 20, 2017, Defendant filed the instant Summary Judgment Motion. ECF No. [104]. In the Summary Judgment Motion, Defendant again argues that, as a threshold matter, Plaintiff's negligence claim—which asserts that Silversea "negligently fail[ed] to adequately arrange and oversee the shoreside handling and treatment of Mr. Baer, negligently fail[ed] to vet local facilities prior to sending Mr. Baer to a facility, and negligently sen[t] Mr. Baer to a facility that Silversea knew or should have known has a reputation for substandard care" (ECF No. [44] at 4)–is time barred. Specifically, Defendant argues that under the reasonable communicative test applicable under maritime law, Plaintiff had notice of the one-year limitations period to bring this action and failed to timely do so. ECF No. [104] at 4–6. In response to this argument, Plaintiff argues that the limitations period does not apply because it "only applies to claims for injuries occurring while onboard the vessel." ECF No. [111] at 5. In the alternative, Plaintiff argues that the one-year limitations period is ambiguous and that that it should be construed against Defendant. *Id.* Because the Court finds the applicability of the limitations period

dispositive, it need not visit the other arguments raised in the Summary Judgment Motion or the Daubert Motions.

## II.     RELEVANT FACTUAL BACKGROUND

The following facts are not genuinely in dispute unless otherwise noted.  Plaintiff is a retired businessman and avid cruiser in his nineties.  ECF No. [85-1] Baer Deposition Transcript ("Baer Tr.") at 8, 21, 31.  In 2014, Plaintiff emailed his long time travel agent Mary Nichols of Frosch travel agency in Pompano Beach and instructed her to book a cruise for him and his wife aboard the Silversea's *M/V Silver Spirit* ("Cruise").  The Cruise was to begin in Fort Lauderdale on January 6, 2015 and end in Los Angeles on January 22, 2015.  ECF No. [105] & [110] ¶¶ 2-3; Baer Tr. at 49–51, 53–54; ECF No. [16-1], Berman Affidavit ("Berman Aff.") ¶ 7.  Nichols booked the Cruise as instructed.  Berman Aff. ¶ 7; ECF No. [105] & [110] ¶ 3.

Defendant sent an email to Nichols on June 11, 2014 which provided links to the required Guest Information Form to be filled out by Plaintiff or Plaintiff's agent prior to the Cruise. Berman Aff. ¶ 8.  On September 12, 2014, Nichols submitted to Defendant the Plaintiff's emergency and personal contact information, copy of his passport, requested "suite configuration," and two "Special Requests."  *See* ECF No. [108], James Baer's Notice of Filing in Support of His Response in Opposition to Silversea Cruises Ltd.'s Motion for Summary Judgment at 165.  Also on September 12, 2014, Nichols submitted the "Passage Contract Acceptance" on behalf of Plaintiff and his wife.  *Id.* (noting "Passage Contract Acceptance" submitted by mary.nichols@frosch.com on September 12, 2014); *see also* Berman Aff. ¶ 9.

The first page of the Passage Contract, states in all uppercase and bold (underlining in original):

ISSUED SUBJECT TO IMPORTANT TERMS AND
CONDITIONS
PLEASE READ CAREFULLY BEFORE ACCEPTING

IMPORTANT NOTICE TO PASSENGERS

THIS PASSAGE CONTRACT IS A LEGALLY BINDING
CONTRACT BETWEEN YOU, THE PASSENGER, AND
SILVERSEA CRUISES LTD. (THE "CARRIER"). THIS
PASSAGE CONTRACT CONTAINS IMPORTANT TERMS
AND CONDITIONS. THESE TERMS AND CONDITIONS
APPEAR BELOW IN THIS PASSAGE CONTRACT.

THERE ARE IMPORTANT LIMITATIONS ON YOUR RIGHTS
AS A PASSENGER TO ASSERT CLAIMS AGAINST THE
CARRIER, THE VESSEL AND RELATED ENTITIES.

YOU ARE DIRECTED TO CAREFULLY READ AND
UNDERSTAND SECTIONS 11, 12, 13, 14 AND 17 OF THIS
PASSAGE CONTRACT, AS THEY CONTAIN SIGNIFICANT
LIMITATIONS ON YOUR RIGHTS TO ASSERT CLAIMS
AGAINST THE CARRIER, THE VESSEL, THE CRUISE LINE,
RELATED ENTITIES AND THEIR OFFICERS, AGENTS AND
EMPLOYEES.

CARRIER'S LIABILITY TO YOU AND/OR YOUR RIGHT TO
RECOVER FROM CARRIER IS LIMITED BY THESE TERMS
AND CONDITIONS AND YOU ARE DIRECTED TO READ
AND FULLY UNDERSTAND THE LIMITATIONS OF
LIABILITY CONTAINED IN THIS PASSAGE CONTRACT
AND ESPECIALLY THOSE LIMITATIONS CONTAINED IN
SECTIONS 11, 12, 13 AND 14 OF THIS PASSAGE
CONTRACT.

SECTIONS 11, 12, 13 AND 14 LIMIT YOUR RIGHT TO SUE
AND RECOVER FROM CARRIER. SECTION 17 GOVERNS
THE PROVISION OF MEDICAL AND OTHER PERSONAL
SERVICES ONBOARD THE VESSEL.

PLEASE NOTE: THE BOOKING AND PURCHASE OF A
CRUISE WITH THIS CARRIER CONSTITUTES
ACCEPTANCE BY PASSENGER OF ALL TERMS AND
CONDITIONS OF THIS PASSAGE CONTRACT, AS IT MAY
BE AMENDED OR MODIFIED.

. . .

> PASSENGER ACKNOWLEDGES AND UNDERSTANDS
> THAT HE/SHE IS REQUIRED TO READ THIS PASSAGE
> CONTRACT IN ITS ENTIRETY PRIOR TO MAKING ANY
> PAYMENT FOR THE CRUISE BOOKING. ANY PAYMENT
> MADE TOWARDS A BOOKING SHALL CONSTITUTE
> PASSENGER'S ACCEPTANCE OF THE TERMS AND
> CONDITIONS SET FORTH IN THE PASSAGE CONTRACT.

*Id.* Section 13, entitled "Time Limit for Reporting Injury or Losses and Claims," states, also in all capital letters and in bold:

> PASSENGER UNDERSTANDS AND AGREES THAT:
>
> A. ANY INCIDENT OR ACCIDENT RESULTING IN INJURY,
> ILLNESS, OR DEATH TO THE PASSENGER MUST BE
> REPORTED IMMEDIATELY TO THE VESSEL'S OFFICERS.
> CARRIER WILL NOT BE LIABLE FOR ANY LOSS UNLESS
> A DETAILED WRITTEN CLAIM IS PRESENTED TO
> CARRIER WITHIN SIX (6) MONTHS AFTER THE DATE OF
> THE INCIDENT OR ACCIDENT. LAWSUITS MUST BE
> FILED BY PASSENGER WITHIN ONE (1) YEAR OF THE
> DATE OF THE INCIDENT OR ACCIDENT CLAIMED OR
> ALLEGED TO HAVE CAUSED THE INJURY, ILLNESS, OR
> DEATH.
>
> . . .
>
> C. IF A WRITTEN CLAIM IS NOT MADE AND SUIT IS NOT
> FILED WITHIN THE TIME PROVIDED IN THIS SECTION 13,
> THEN THE PASSENGER WAIVES AND RELEASES ANY
> RIGHT HE OR SHE MAY HAVE TO MAKE ANY CLAIM
> AGAINST CARRIER ARISING UNDER, IN CONNECTION
> WITH, OR INCIDENT TO THIS TICKET OR THE VOYAGE.

ECF No. [16-1] at 13 ("Section 13").

Plaintiff and his wife embarked on the Cruise as planned on January 6, 2015. ECF No. [85-1] Baer Tr. at 57. On January 17, 2015, Plaintiff fell while aboard the Cruise. ECF No. [105] & [110] at ¶ 6; ECF No. [87-1], Orthopedic Surgery Report by Jan Pieter Hommen at 1. Plaintiff was brought to the shipboard medical center and examined by the ship's doctor who diagnosed him with a right hip fracture. ECF No. [105] & [110] ¶ 7. The shipboard doctor took

x-rays, prescribed oral analgesics, and sent Plaintiff to his room to rest. *Id.*; *see also* ECF No. [85-1] Baer Tr. at 77–78; ECF No. [87-1], Orthopedic Surgery Report from Hommen at 1. The shipboard doctor also "initiated the process of disembarking Plaintiff at the next port of call for treatment by an orthopedic specialist." ECF No. [105] & [110] ¶ 7. On January 19, 2015, Plaintiff disembarked and was transferred to Amerimed Hospital in Cabo San Lucas. ECF No. [85-1] Baer Tr. at 77–78; ECF No. [86-1] Burns Tr. 38-39; *see also* ECF No. [105] ¶ 9.

The parties dispute much of the facts subsequent to Plaintiff's examination by the shipboard doctor, including the medical reasons for disembarkation; the quality of the care provided at Amerimed Hospital; and the content of conversations between Silversea, Plaintiff, Plaintiff's family, the U.S. Embassy, and two insurance carriers. *See generally* ECF No. [105], [110], & [115]. Both parties have additionally submitted voluminous records and testimony related to Plaintiff's medical care and health. However, because the Court finds that the limitations period in the Passage Contract is enforceable and renders Plaintiff's negligence claim untimely, the Court need not delve further into those facts related to Plaintiff's medical care and health.

## III.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, (1986); *see also* Fed. R. Civ. Pro. 56(a). The parties may support their positions by citation to the record, including, *inter alia*, depositions, documents, affidavits, or declarations. *See* Fed. R. Civ. P. 56(c). An issue is genuine if "a reasonable trier of fact could return judgment for the

non-moving party." *Miccosukee Tribe of Indians v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson*, 477 U.S. at 247–48).

The moving party shoulders the initial burden to demonstrate the absence of a genuine issue of material fact. *See Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). A movant must present evidence demonstrating that it can establish the basic elements of his claim. *Celotex*, 477 U.S. at 322. Once the moving party has met its burden, the non-movant must "go beyond the pleadings" and show that there is a genuine issue for trial. *Id.* at 324; *see also* Fed. R. Civ. Pro. 56(c)(1). The Court draws all inferences from the underlying facts in the light most favorable to the party opposing the motion. *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–59 (1970). Thus, to avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). After the nonmoving party has responded to the motion for summary judgment, the Court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Thus, "a 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.' " *Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014) (per curiam) (quoting *Anderson*, 477 U.S. at 249) (emphasis added).

IV.    ANALYSIS

A.    The One Year Limitations Period Is Enforceable

Courts will enforce a limitations period contained in a cruise ticket contract which limits the time frame in which an injured passenger may file suit if the "contract provided the passenger with reasonably adequate notice that the limit existed and formed part of the passenger contract." *Nash v. Kloster Cruise A/S*, 901 F.2d 1565, 1566 (11th Cir. 1990) (per curiam). In the Eleventh Circuit, this standard is applied using the "reasonable communicativeness" test.[1] *Estate of Myhra v. Royal Caribbean Cruises, Ltd.*, 695 F.3d 1233, 1244 (11th Cir. 2012) (applying the reasonable communicativeness test to a cruise ticket contract); *Krenkel v. Kerzner Int'l Hotels Ltd.*, 579 F.3d 1279, 1281 (11th Cir. 2009) (per curiam) (applying same to guest hotel contract). The test requires a two-pronged analysis of the physical characteristics of the clause in question and plaintiff's opportunity to review and understand the contract terms. *Id.* Thus, "[t]he reasonable communicativeness test involves an analysis of the overall circumstances of the ticket itself, but also of any extrinsic factors indicating the passenger's ability to become meaningfully informed of the contractual terms at stake.' " *Lankford v. Carnival Corp.*, No. 12-24408-CIV, 2013 WL 12064497, at *4 (S.D. Fla. June 18, 2013) (quoting *Wallis v. Princess Cruises, Inc.*, 306 F.3d 827, 835 (9th Cir. 2002))

Under the first prong, the Court examines the term's physical characteristics, such as typeface, conspicuousness, and clarity, to determine whether the term is reasonably presented to the passenger. *Myhra*, 695 F.3d at 1245–46 (citing *Wallis*, 306 F.3d at 885–36 and *Spataro v. Kloster Cruise, Ltd.*, 894 F.2d 44 (2d Cir. 1990) (per curiam)).

---

[1] The parties do not dispute that the reasonable communicativeness test applies. *See* ECF Nos. [104] at 4; [111] at 7.

Under the second prong, the Court examines whether the passenger "had the ability to become meaningfully informed of the clause and to reject its terms." *Myhra*, 695 F.3d at 1246. This analysis includes the circumstances surrounding the passenger's purchase of the ticket, the passenger's ability and incentive to become familiar with its terms, and any other notice that the passenger received outside of the ticket. *Id.* (quoting *Wallis*, 306 F.3d at 836); *see also Lankford*, 2013 WL 12064497, at *4. Importantly, the second prong of the reasonably communicative test does not require a court to determine whether the passenger *actually* read the contract term in question; rather, the relevant inquiry is whether the passenger had reasonable *opportunity* to review that term. *See Myhra*, 695 F.3d at 1246 n.42 ("We note that whether the Myhras chose to avail themselves of the notices and to read the terms and conditions is not relevant to the reasonable communicativeness inquiry." (citation omitted)); *Kirby v. NCL (Bah.) Ltd.*, No. 10-23723-CV, 2010 WL 11556551, at *1 (S.D. Fla. Dec. 28, 2010) ("[I]t is well settled that the issue is not whether a passenger has read its ticket, but instead whether the passenger had the *opportunity* to read its ticket." (collecting cases)).

The second prong may be satisfied by constructive notice when a reasonable opportunity to become meaningfully informed of the contract term is provided to the passenger's agent who books travel arrangements on the passenger's behalf. *McArthur v. Kerzner Int'l Bah. Ltd.*, 607 F. App'x 845, 847–48 (11th Cir. 2015) ("[B]ecause the McArthurs' trip involved travel arrangements made by the travel agent, they are charged with constructive notice of the terms and conditions in the contract the travel agent had with the Atlantis Resort."); *Kirby*, 2010 WL 11556551, at *1 (noting "[c]ourts have even held that a travel agent's possession of the ticket is sufficient to charge passengers with constructive notice of the ticket provisions" (citing *Gomez v. Royal Caribbean Cruise Lines*, 964 F. Supp. 47, 50–51 (D.P.R. 1997); *Hicks v. Carnival Cruise*

*Lines, Inc.*, 1995 A.M.C. 281, 288–89 (E.D. Pa. 1994); *Shankles v. Costa Armatori, S.P.A.*, 722 F. 2d 861, 863–64 (1st Cir. 1983))).

### 1. Physical Characteristics of the One Year Limitations Period

The one-year limitations period contained in the Plaintiff's Passage Contract is sufficiently clear and conspicuous to meet the first prong of the reasonably communicative test. The first page of the Passage Contract informs the passenger in legible, bold, and capitalized typeface that the passenger should "carefully read and understand Section[] . . . 13," noting that it contains "significant limitations on [the passenger's] rights to assert claims against," *inter alia*, Defendant. ECF No. [16-1] at 5. The same page also states "Section[] 13 limit[s the passenger's] right to sue and recover from the carrier." *Id.* This language clearly and conspicuously notifies the passenger on the first page of the Passage Contract that the Passage Contract contains limitations of the passenger's rights.

The text of the one-year limitations period appears in Section 13, entitled "Time Limit for Reporting Injury or Losses and Claims," on pages 9–10 of the thirteen-page Passage Contract. ECF No. [160-1] at 13. Section 13, Part A limits a passenger's right to sue, disclaiming the carrier's liability for any claim by stating: "Lawsuits must be filed by passenger within one (1) year of the date of the incident or accident claimed or alleged to have caused the injury, illness, or death." ECF No. [16-1] at 13.[2] Section 13, Part C further states that if "suit is not filed within the time provided in this Section 13, then the passenger waives and releases any right he or she may have to make any claim against carrier arising under, in connection with, or incident to this ticket or the voyage." *Id.* Section 13 is written in plain English that adequately communicates its

---

[2] While Section 13 contains a requirement that both a "detailed written claim" be filed within six months and any subsequent lawsuit be filed within a year, Defendant does not raise any arguments regarding the timeliness of any "detailed written claim."

content to a lay passenger. Like the statements on the first page of the Passage Contract, the one-year limitations period is printed in legible, bold, and capitalized typeface. The limitations period contained in Section 13 is not "buried" in the Passage Contract. To the contrary, the first page directs the passenger to specifically review Section 13, which plainly states that the passenger must file any lawsuit "against carrier arising under, in connection with, or incident to this ticket or the voyage" within one year. ECF No. [16-1] at 13. These characteristics are sufficient to satisfy the first prong. *See Myhra*, 695 F.3d at 1245–46 (finding lengthy booklet with "very small, but legible, type" which on the first page specifically directed passengers to terms and conditions on the back of brochure satisfied provided reasonably adequate notice); *Nash*, 901 F.2d at 1567–68 (finding multi-page cruise contract where first page specifically directed passenger to certain terms and conditions and where each numbered paragraph of contract is typed in the same size letter, style and color was sufficiently communicative); *Calixterio v. Carnival Corp.*, No. 15-22210-CIV, 2016 WL 3973791, at *3 (S.D. Fla. Jan. 7, 2016) (finding the ticket contract's physical characteristics, including the "bolded, capitalized heading at the top of the ticket contract directing the passenger to specific terms and conditions, along with the legible and consistent font of the rest of the contract, provides reasonably adequate notice to satisfy the first prong of the test.").

### 2.  Opportunity To Be Meaningfully Informed of the Limitations Term

The limitation period contained in the Passage Contract also satisfies the second prong because Plaintiff received both constructive and actual notice of the one-year limitations period. Plaintiff stated unequivocally at his deposition that that Nichols, his travel agent, was authorized to book the Cruise on his behalf. Baer Tr. at 56 ("Q. Did you authorize Mary Nichols to book the subject Silversea cruise on your behalf? A. Yes"). It is undisputed that Plaintiff's travel

agent Nichols, on behalf of her client, accepted the Passage Contract on September 12, 2014. In addition, Defendant further averred that Silversea mailed a physical copy of the Passage Contract to Nichols via UPS. ECF No. [16-1] ¶ 10. As Plaintiff's agent, Nichols had a meaningful opportunity to review the Passage Contract and affirmatively accepted it on the Plaintiff's behalf. Plaintiff is accordingly charged with constructive notice of the Passage Contract, including the limitations period found in Section 13, satisfying the second prong. *Kirby*, 2010 WL 11556551, at *1–2 (finding limitations period enforceable when a third party made travel arrangements on Plaintiff's behalf and plaintiff contended she never received or reviewed the ticket contract); *Angel v. Royal Caribbean Cruises, Ltd.*, No. 02-20409-CIV, 2002 WL 31553524, at *3 (S.D. Fla. Oct. 22, 2002) (finding one-year limitations period enforceable because plaintiff had reasonable notice of the contracts conditions even when plaintiff did not pay for his own ticket and plaintiff did not read its terms)[3].

Plaintiff argues that he cannot be charged with constructive knowledge through his travel agent under *Warrick v. Carnival Corp.*, No. 12-61389-CIV, 2013 WL 3333358, at *12 (S.D. Fla.

---

[3] The record also suggests that the Plaintiff himself had a meaningful opportunity to review the Passage Contract. First, Plaintiff testified that he received a copy of the "ticket contract" (ECF No. [85-1] Baer Tr. at 57), that he received via FedEx "final" booking documents from Nichols (*id.* at 63–64), and that he presented his "contract page" before boarding the Cruise. *Id.* at 60. Moreover documents submitted by Plaintiff in opposition to the Summary Judgment Motion include printouts of the confirmations for the Cruise, one marked "Travel Agent Copy" and the other marked "Guest Copy," that state that "Guests are required to read the Booking Terms & Conditions and Passage Contract in their entirety prior to making any payment for the booking of the cruise" and provide a link to the Passage Contract. *Id.* at 142–47. Since the Court finds that Plaintiff had constructive notice of the Passage Contract's limitations period, it need not decide whether Plaintiff *personally* had an opportunity to be meaningfully informed of the terms of the Passage Contract. However, these facts likely would be sufficient to independently satisfy the second prong of the reasonable communicativeness test. *See, e.g.*, *Calixterio*, 2016 WL 3973791, at *4 ("Although Plaintiff asserts she never actually read the ticket contract, there is nothing in the record to suggest that Plaintiff could not read the ticket contract—which was available on Carnival's website and in her mother-in-law's possession—prior to embarking on the cruise had she chosen to do so.").

Feb. 4, 2013).  However, that case is procedurally and factually distinct: the *Warrick* Court found that, based on the record before it on the motion to dismiss for forum non conveniens, it was unclear whether the agent had notice of the terms of the contract.  *Id.* Here, the record evidence supports the finding that Nichols had notice of the terms of the Passage Contract when she affirmatively accepted it on Plaintiff's behalf.

Taking these facts in the light most favorable to Plaintiff on Defendant's Motion for Summary Judgment, there is no dispute of a material fact that Silversea reasonably communicated the Passage Contract to Plaintiff.  Accordingly, the limitations period contained in Section 13 is enforceable.

### B.      Plaintiff's Claims Are Barred by the Limitations Period

Having found that the one year limitations period is enforceable, the Court now analyzes the term's applicability to Plaintiff's negligence claim.  Contrary to Plaintiff's argument on opposition to the Summary Judgment Motion, *see* ECF No. [111] at 5–6, a plain reading of the Section 13 does not limit its applicability to injuries which occur solely on the vessel.  In fact, Section 13 contains expansive language which applies to "any claim against the carrier *arising under, in connection with, or incident to this ticket or the voyage*."  ECF No. [16-1] at 13 (emphasis added).  There is no genuine dispute that the injuries in question—whether confined to actions taken by Silversea's personnel on the vessel or expanded to those taken after Plaintiff disembarked—arose "in connection with" or "incident to" the Cruise "ticket or the voyage." *See, e.g.*, *Myhra*, 695 F.3d at 1237 (finding forum selection clause which applied to "any dispute, claim or other matter arising out of or in connection with your contract or your holiday with us will only be dealt with by the Courts of England and Wales" applied to a bacterial infection resulting in death allegedly contracted aboard cruise); *Sharpe v. W. Indian Co.*, 118 F. Supp. 2d

646, 653 (D.V.I. 2000) (finding limitations period applied to injuries related to a fall after disembarkment under contract clause which stated "in no event shall any such suit for any cause against carrier or the vessel for delay, detention, personal injury, illness or death be maintainable unless such suit shall be commenced (filed) within one (1) from the day when the delay, detention, personal injury, illness or death occurred . . . ."). Thus, the limitations period in Section 13 applies to Plaintiff's claim.

In opposition to the Summary Judgment Motion, Plaintiff argues that this Court "previously considered Silversea's statute of limitations argument and rejected it." ECF No. [111] at 5. But this argument misreads the Court's Order on the Motion to Dismiss which found that the factual inquiry required to determine the enforceability of a limitations period in a passenger ticket was premature on a motion to dismiss. ECF No. [29] at 4, 6. Moreover, as argued by Plaintiff at that time, the particular document then attached to the Defendant's motion to dismiss was in dispute. Now, on summary judgment, and after the completion of discovery, the Court properly considers Defendant's limitations argument in light of the record evidence.

The Court notes that neither party has cited authority in this Circuit which interprets the applicability of the "in connection with" or "incident to" language found in Plaintiff's Passage Contract to claims arising out of alleged negligent disembarkment after a fall occurring on the vessel. Plaintiff urges the Court to apply the analysis of the First Circuit in *Rams v. Royal Caribbean Cruise Lines, Inc.*, 17 F.3d 11, 12 (1st Cir. 1994) of "an almost identical provision" that limited the time period to sue to one year. ECF No. [111] at 5–6. However, the First Circuit's analysis lends no support to Plaintiff because the one-year limitations period in *Rams* did not contain the "in connection with" or "incident to" language. And, while the *Rams* Court found that the ticket language was ambiguous and thus construed it against the defendant carrier,

it noted that "if the ticket in this case had explicitly set forth a one-year limitation period for any personal injury claims, whether the injuries were suffered on ship or shore, we strongly suspect that this suit would be barred." *Id.* at 12. Considering the "in connection with" or "incident to" language contained in the Passage Contract, this *dicta* in *Rams* further persuades this Court that the one-year limitations period applies to Plaintiff's claim, which is, at a minimum, is "incident to" the Cruise.

Applying the one-year limitation period here, Plaintiff's claim is untimely. It is undisputed that Plaintiff's injury occurred on January 17, 2015, that he disembarked on January 19, 2015, and that he was discharged from Amerimed Hospital and airlifted to Florida on January 22, 2015. ECF No. [87-1] at 1–2. Even assuming that Plaintiff's negligence claim accrued on the date Plaintiff was discharged from Amerimed Hosptial, Plaintiff was required to file this action by January 22, 2016. Plaintiff filed this action on January 26, 2017, over a year after the contractual limitations period expired. Accordingly, Plaintiff's negligence claim is untimely and summary judgment is granted if favor of Defendant.

## V.     CONCLUSION

For the reasons stated herein, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion for Summary Judgment and Memorandum of Law in Support, **ECF No. [104]**, is **GRANTED.**

2. Defendant's Omnibus Daubert Motion to Strike Plaintiff's Experts, Christopher Hayes, Dr. John Bradberry, and Dr. David Watson, **ECF No. [107]**, is **DENIED AS MOOT**.

3. The Court will issue final judgment by separate order.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 5th day of February, 2018.

_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record